UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
DAVID JACKSON,                      )
                                    )
                  Petitioner,       )
                                    )        CIVIL ACTION
           v.                       )        NO. 99-11837-WGY
                                    )
JOHN MARSHALL,                      )
                                    )
                  Respondent.       )
_____)


YOUNG, D.J.                              December 8, 2015

**MEMORANDUM AND ORDER**

## I.    INTRODUCTION

Petitioner, David Jackson ("Jackson"), asks this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for armed robbery, burglary, and first-degree murder in the Massachusetts Superior Court sitting in and for the County of Suffolk.  Pet. Writ Habeas Corpus ("Habeas Pet."), ECF No. 4.  In 2009, this Court stayed a previous petition for habeas corpus pending further proceedings in the Massachusetts courts regarding two of Jackson's claims. Jackson v. Marshall ("Jackson II"), 634 F. Supp. 2d 146, 163-64 (D. Mass. 2009).  After this Court issued a stay of his habeas corpus petition, Jackson filed his third motion for a new trial in the state court.  Commonwealth v. Jackson ("Commonwealth III"), 468 Mass. 1009, 1009 (2014).  The Massachusetts Supreme

Judicial Court ("SJC") upheld the trial court's denial of his motion.  Id. at 1013.  Now that Jackson has exhausted his state avenues of relief, this Court adjudicates his remaining claims: that (1) the prosecutor misrepresented to the jury that Steven Olbinsky ("Olbinsky") would be prosecuted for murder, thus impermissibly bolstering his credibility, and (2) Jackson's due process rights were violated by the Commonwealth's failure to disclose the favorable treatment it requested for Olbinsky.  See Pet'r's Br. Supp. Pet. Habeas Corpus ("Pet'r's Br.") 22-24, 26, 28, ECF No. 117.

On direct appeal, these claims might have succeeded.  This Court is far removed from that, however, and at this point can only grant Jackson his requested relief if he overcomes a "formidable barrier," Burt v. Titlow, 134 S. Ct. 10, 16 (2013), the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq. (2000).  While Jackson does not clear this hurdle, the Court nevertheless briefly recounts his post-trial discoveries that are relevant to his current claims because they give the Court pause.

## II.  ANALYSIS

This Court has discussed in detail the factual and procedural background of Jackson's case in its 2007 order, Jackson v. Marshall ("Jackson I"), 500 F. Supp. 2d 1, 2-4 (D. Mass. 2007), and in its 2009 order, Jackson II, 634 F. Supp. 2d

[2]

at 149-53.  The SJC has also weighed in on the case by denying

three separate motions for a new trial.  Commonwealth III, 468

Mass. at 1013; Memorandum of Decision & Order, Commonwealth v.

Jackson ("Commonwealth II"), No. SJ-2003-0065 (Mass. Oct. 23,

2003), ECF No. 13;[1] Commonwealth v. Jackson ("Commonwealth I"),

428 Mass. 455, 467-68 (1998).  The Court will rely on those

recitations and will limit its discussion to those facts that

are relevant to Jackson's current claims.

     At Jackson's trial, the Commonwealth introduced its chief

witness, Olbinsky, by assuring the jury both that he was a co-

defendant, and that it had not given him any "reward[]" for

testifying:

>      [A]s I said Stephen Olbinsky's going to come in and
>      testify.  He's a defendant in this case; he's charged with
>      first degree murder.  It's important to note at the out-
>      front the Commonwealth, that's me of the district
>      attorney's office, is offering nothing to Mr. Olbinsky for
>      his testimony.  There's been no rewards, there's been no
>      promises, there's been no inducements, no offers for his
>      testimony.  If there were, you'd know about it.

Trial Tr., vol. 2, 23-24.  Jackson's counsel, through cross-

examining Olbinsky at trial, attempted to suggest Olbinsky

should not be trusted, see id. at 88-89, 106-09, 158-60, but

noted during his closing argument that no evidence had been

presented showing that the prosecutor or police had made

---

[1] This memorandum was filed by the petitioner with this
Court.  See Mem. Decision Order 2-7, ECF No. 64-2.

Olbinsky any promises or bestowed on him any rewards in exchange for his testimony.  <u>See</u> Trial Tr., vol. 5, 36-37.  Instead, Jackson's counsel could only ask the jury to rely on its common sense.  <u>See id.</u> at 37.  The prosecutor, in closing, responded to Jackson's attacks on Olbinsky by arguing that the jury need not worry that Olbinsky was receiving any sort of special treatment as an inducement to testify: "Stephen Olbinsky's <u>on trial</u>.  I've got the case and <u>if he got a deal, you would have known about it</u>.  Let me repeat that.  You would have known about it.  The testimony was I met the guy two weeks ago."  <u>Id.</u> at 50 (emphasis supplied).

Olbinsky never was "on trial" for murder, however: a motion to dismiss the first-degree murder indictment against him, unopposed by the Commonwealth, was allowed two weeks after Jackson's trial had finished.  <u>Jackson II</u>, 634 F. Supp. 2d at 150.  Throughout his multiple motions for a new trial and habeas petitions, Jackson's most promising claim has always been that the Commonwealth rewarded Olbinsky for testifying against him and that it did not disclose the evidence of such rewards to Jackson, even though they would have constituted valuable grist for cross-examination.  The last time he was before this Court, Jackson argued that a bail agreement between the Commonwealth and Olbinsky, allowing Olbinsky free on bail despite a pending first-degree murder charge, was circumstantial evidence of a

reward to him and should have been disclosed to Jackson, but this Court ruled such claim procedurally defaulted.  Id. at 159.[2]

Now, Jackson has what he argues is additional proof of a deal: during Jackson's trial, Olbinsky was facing prosecution for multiple counts of possession and delivery of a controlled substance in Oregon -- and Oregon prosecutors noted, before Jackson's trial had begun, that "evidently we're trying to work with prosecutors in Boston to treat [Olbinsky] nicely, as he's a material witness in a murder case there."  Suppl. Mem. Supp. Mot. Hr'g Disc., Ex. C, District Att'y File Notes, ECF No. 74; Commonwealth III, 468 Mass. at 1009.  Olbinsky eventually pled guilty to a single count of possession, and received a sentence of probation.  Commonwealth III, 468 Mass. at 1009, 1010 n.2.[3]

---

[2] In its 2009 opinion, this Court stated that, in holding that Jackson's claim relating to a bail agreement entered into by Olbinsky and the Commonwealth was procedurally defaulted, it had "ignore[d] the information that has been uncovered with respect to the Oregon drug charge[,]" because that claim was not yet exhausted.  Id. at 162.  The standard for establishing prejudice sufficient to overcome a procedural default is whether there is a "'reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense.'"  Id. at 160 (quoting Strickler v. Greene, 527 U.S. 263, 289 (1999)).  In his current petition Jackson does not challenge the Court's prior determination that the bail agreement is procedurally defaulted.

[3] John Raviolo, Oblinsky's Oregon counsel, stated in an affidavit that he had learned from Olbinsky and Olbinsky's defense counsel in Massachusetts that Olbinsky's murder charge had been a sham charge, and that Olbinsky was indicted in Massachusetts for murder because "it was an easier course than obtaining his presence in [Massachusetts] court via out-of-state

Jackson's first claim -- that the prosecutor impermissibly bolstered Olbinsky's credibility by stating that he would be prosecuted for murder -- has been adjudicated on the merits by the SJC.  See Commonwealth III, 468 Mass. at 1011 (describing previous rejection on the merits; affirming such rejection).[4] Thus Jackson must show that its decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).

Jackson is correct that Olbinsky was not "on trial."  He is also correct that the SJC's reasoning is flawed, as it appears

---

witness procedures."  Suppl. Answer vol. 2, 98.  According to Jeanne Kempthorne -- Jackson's attorney -- Raviolo, in arguing for leniency in the Oregon case, relied on Olbinsky's cooperation with Massachusetts authorities.  Id. at 232. Jackson corroborated Raviolo's statement by providing Kempthorne's affidavit, which stated Olbinsky and Ruby (Olbinsky's defense counsel in Massachusetts) knew that Olbinsky was not going to be prosecuted for first-degree murder.  Aff. Jeanne M. Kempthorne 2, ECF No. 72.

[4] Although the SJC's decision states that it need not re-consider this claim because it has already "considered this issue in [Jackson's] direct appeal," id. at 1011, this does not constitute a procedural default for purposes of habeas review: "When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review."  Cone v. Bell, 556 U.S. 449, 466 (2009).

to have misunderstood the thrust of Jackson's argument.[5]  Again,
however, AEDPA informs this Court's analysis:

> Under § 2254(d), a habeas court must determine what
> arguments or theories supported or, as here, <u>could
> have supported, the state court's decision</u>; and then
> it must ask whether it is possible fairminded jurists
> could disagree that those arguments or theories are
> inconsistent with the holding in a prior decision of
> this Court.

<u>Harrington</u> v. <u>Richter</u>, 562 U.S. 86, 102 (2011) (emphasis

supplied).  In other words, "the ultimate question is not how

well reasoned the state court decision is, but whether the

---

[5] The SJC ruled that had the prosecutor disclosed that the
Commonwealth did not intend to prosecute Olbinsky, and that had
Olbinsky been aware of such declaration, it would only have
bolstered Olbinsky's credibility, rather than undermined it.
<u>See</u> <u>Commonwealth III</u>, 468 Mass. at 1012 (citing <u>Commonwealth I</u>,
428 Mass. at 459).  In other words, the SJC echoed its earlier
ruling that "[h]ad the prosecutor revealed that Olbinsky was no
longer in danger of being tried for this crime and that he knew
it, that would have done far more for Olbinsky's credibility
than did the silence to which the defendant now objects."
<u>Commonwealth I</u>, 428 Mass. at 459.

Jackson alleges that, at his trial, the prosecutor used
Olbinsky's pending prosecution to show that Olbinsky had no
reason to lie: no matter what his testimony, the prosecutor
suggested, he would be tried for murder.  That Olbinsky was <u>not</u>
in fact prosecuted for murder suggests at least two possible
inferences.  First is the one provided by the SJC -- that, even
if Olbinsky had known this, he would have had no reason to lie,
because he would have known that, in fact, there was no "sword
of Damocles hanging over him in the form of a murder charge,"
<u>Commonwealth I</u>, 428 Mass. at 458.  But there is certainly
another: that whether or not Olbinsky would be charged with
murder, or something less, or nothing at all, depended on
whether he testified satisfactorily in Jackson's trial.  This
second inference <u>could have</u> undermined his credibility in the
eyes of the jury.

outcome is reasonable." Zuluaga v. Spencer, 585 F.3d 27, 30 n.1 (1st Cir. 2009) (internal citation and quotation marks omitted). An argument that "could have," Harrington, 562 U.S. at 102, supported denying Jackson's claim is that, even assuming there was a constitutional error in the prosecutor's statement, it did not cause "substantial and injurious effect" on the jury's proceedings. Fry v. Pliler, 551 U.S. 112, 121 (2007). This would not be an unreasonable result because here, as this Court has previously discussed, there was other testimony supporting Olbinsky's, see Jackson II, 634 F. Supp. 2d at 161 ("[E]ven were Olbinsky's testimony discredited, there was other evidence linking Jackson to the crime") (internal footnote omitted), and as the SJC correctly noted, "Olbinsky had given consistent statements well before the Oregon charges arose[.]" Commonwealth III, 468 Mass. at 1011 (internal citation omitted).

The SJC adjudicated on the merits Jackson's second argument -- that the Commonwealth's failure to disclose its advocacy on Olbinsky's behalf with the Oregon prosecutor violated his right to due process -- and held that the new disclosure from the Oregon prosecutors did not create "a substantial risk that the jury would have reached a different conclusion if the evidence had been admitted at trial." Commonwealth III, 468 Mass. at 1010 (citing Commonwealth v. Tucceri, 412 Mass. 401, 413 (1992)). This Court again must review Jackson's claim under

AEDPA, analyzing only whether the SJC's decision "was contrary

to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of

the United States."   28 U.S.C. § 2254(d)(1).[6]   Jackson's

constitutional claim is one of non-disclosure, relying on <u>Brady</u>

and its progeny.  <u>See</u> Pet'r's Br. at 26 (citing <u>Brady</u> v.

<u>Maryland</u>, 373 U.S. 83, 87 (1963); <u>United States</u> v. <u>Giglio</u>, 405

U.S. 150, 154 (1976)).   For Jackson to win habeas relief from

this Court, he must show that the SJC's holding -- that this

non-disclosure did <u>not</u> contain "evidence [that] is 'material'

within the meaning of <u>Brady</u> [meaning that] there is a reasonable

probability that, had the evidence been disclosed, the result of

the proceeding would have been different," <u>Smith</u> v. <u>Cain</u>, 132 S.

Ct. 627, 630 (2012) (internal citation omitted) -- was

unreasonable.   In light of the above-discussed independent

testimony linking Jackson to the crime, and Olbinsky's prior

consistent statements, the Court cannot hold that the SJC's

decision constituted an unreasonable application of clearly

established federal law, thus the Court cannot grant Jackson's

---

[6] Jackson's argument that the SJC relied on <u>state</u> law in
making its determination misses the point, as the First Circuit
has already held that a state court's determination under
<u>Tucceri</u>'s standard, which is more favorable to defendants than
the federal standard, precludes <u>de novo</u> review of a petitioner's
claims for purposes of AEDPA.  <u>McCambridge</u> v. <u>Hall</u>, 303 F.3d 24,
35 (1st Cir. 2002).

request for habeas relief.  See, e.g., McCambridge v. Hall, 303
F.3d 24, 34 (1st Cir. 2002) (en banc) (citing 28 U.S.C. §
2254(d)).

Finally, Jackson seeks an evidentiary hearing with regard
to his Brady claim, relying on 28 U.S.C. § 2254(e)(2).  Pet'r's
Br. 20-21.[7]  This Court has already concluded that state courts
have decided the merits of Jackson's claims.  Thus, the record
in this Court is limited to the record that was before the state
courts.  See Cullen v. Pinholster, 563 U.S. 170, 185 (2011) ("If
a claim has been adjudicated on the merits by a state court, a
federal habeas petitioner must overcome the limitation of
[section] 2254(d)(1) on the record that was before that state
court.") (internal footnote omitted).  To seek an evidentiary
hearing under section 2254(e)(2), Jackson first must show that
section 2254(d) does not bar habeas relief.

This Court, however, earlier rejected Jackson's assertion
that state courts unreasonably applied clearly established
Supreme Court's precedents to Jackson's Brady claim, concluding
that Jackson was not entitled to habeas relief under section
2254(d).  In light of this conclusion, Jackson's reliance on
section 2254(e) in seeking evidentiary hearing is without merit

---

[7] This Court previously denied Jackson's evidentiary hearing
request in 2007, Jackson I, 500 F. Supp. 2d at 6, and did not
adjudicate this issue in 2009.  Jackson II, 634 F. Supp. 2d at
163.

and, thus, this Court must deny Jackson's request for an evidentiary hearing.

**III. CONCLUSION**

For the foregoing reasons, this Court **DENIES** Petitioner's writ of habeas corpus, ECF No. 4, and **DENIES** Petitioner's request, in ECF No. 117, for a reconsideration of the Court's prior denial of Petitioner's request for an evidentiary hearing, ECF No. 82.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE